IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-02694-PAB

DEBORAH QUINLISK,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

# ORDER

This matter comes before the Court on plaintiff Deborah Quinlisk's Complaint [Docket No. 1] filed December 11, 2008. Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I. BACKGROUND

On June 14, 2005, Ms. Quinlisk applied for disability benefits, alleging she was unable to work beginning January 1, 2004. After her claim was initially denied, an administrative law judge ("ALJ") held a hearing on December 8, 2006. R. at 14. At the hearing, Ms. Quinlisk amended her disability onset date to March 31, 2005. In a

---

[1]Neither party requested oral argument. *See* Joint Case Management Plan [Docket No. 11] ¶ 9.

decision dated January 18, 2007, the ALJ found that "the claimant has the following severe impairments: affective disorder, adjustment disorder, personality disorder and narcolepsy." R. at 16 (citing 20 C.F.R. § 404.1520(c) and 416.920(c)). The ALJ concluded that these severe impairments did not, alone or in combination, meet or equal one of the listed impairments in the regulations. R. at 17. The ALJ proceeded to find that Ms. Quinlisk retained the "residual functional capacity to perform work with no exertional limitations, that does not require working with moving machinery or at unprotected heights, with no complex tasks . . ., and does not require . . . dealing with the general public." R. at 17. The ALJ concluded that Ms. Quinlisk "is unable to perform any past relevant work," but that she could perform "jobs that exist in significant numbers in the national economy." R. at 20-21. Based on those findings, the ALJ ruled that Ms. Quinlisk was not disabled during the relevant period.[2] On October 23, 2008, the Appeals Council declined review, making the ALJ decision the final decision of the Commissioner. R. at 5-7.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an

---

[2]Despite noting that Ms. Quinlisk had amended her onset date to March 31, 2005, *see* R. 14, the ALJ concluded that she was not disabled "from January 1, 2004 through the date of this decision." R. at 21.

ALJ simply because the Court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**B.  Evaluation of the ALJ's Decision**

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

>which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

>(1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of

4

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

Ms. Quinlisk raises a number of objections to the ALJ's decision.[3]  For present purposes, the Court focuses on Ms. Quinlisk's contention that, even accepting the opinions and sources relied upon by the ALJ, she is disabled under the Act.  Analysis of that contention turns on whether the hypothetical question posed to the vocational expert ("VE"), and ultimately relied upon, by the ALJ, was accurate in light of sources cited by the ALJ.  For the following reasons, the Court finds it was not.

At the hearing, the ALJ posed the following question to the VE:

> Let's assume an individual of the same age and educational background as the claimant without exertional limitations but non[]-exertional limitations of no moving machinery, no unprotected heights, no complex tasks, defined as an [Specific Vocational Preparation] of 2 or less, GED[4] of one or two, no dealing with the general public.

R. at 299.  Based on that hypothetical, the VE presented three examples of jobs existing in significant numbers in the national economy.  The ALJ then added to the hypothetical an additional assumption, namely, that the plaintiff would three to four times a day be unable to stay on task because of falling asleep without warning, a reference to Ms. Quinlisk's narcolepsy.  R. at 299A.  With that added limitation, the VE

---

[3]She argues that the ALJ erred in failing to  (1) apply the appropriate standards when assessing her mental impairments, Pl.'s Br. at 3; (2) rely upon her treating sources as opposed to the consultant examination, *id.* at 11, 19; (3) consider the effect of her mental impairments on her ability to work, *id.* at 12; (4) consider all of her impairments, *id.* at 14, 21; and (5) find her credible, *id.* at 21.  Ms. Quinlisk also argues that the Appeals Council should have remanded her case in light of the new evidence she submitted after the hearing.  *Id*. at 10.

[4]"'General Educational Development (GED) embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Sandoval v. Barnhart*, 209 F. App'x 820, 825 (10th Cir. 2006) (unpublished) (citing Dictionary of Occupational Titles, App. C.).

concluded that there would be no jobs in the national economy which Ms. Quinlisk could perform.  R. at 299-299A .

The ALJ's second question was based on the evidence of record that Ms. Quinlisk suffers from narcolepsy, a condition the ALJ concluded was supported by the record.  He included it in the list of her severe impairments, *see* R. at 16, and added the limitations related to "environmental hazards . . . based on the claimant's diagnosis of narcolepsy."  R. at 20.  Yet, in his decision, the ALJ denied benefits based on the testimony the VE supplied in response to the first question.  In other words, while the ALJ concluded that Ms. Quinlisk should not work at heights or around moving machinery because she might fall asleep unexpectedly, he relied without explanation on a hypothetical which only included the safety concerns implicated by narcolepsy and not the effects on the ability to stay on task.  The ALJ may have reasoned that her narcolepsy would prevent her from working at heights and with machinery, but was not so severe as to have a daily impact on her ability to stay on task at other jobs.  Even if the Court accepted that finding, the ALJ's hypothetical, and the decision to deny benefits which flowed from it, suffers from another flaw.

The ALJ relied on the state agency reports as well as the opinion of the consultative physician, Dr. R. Terry Jones.  The ALJ gave Dr. Jones' opinion "great weight," R. at 18, and described it as follows:

> Dr. Jones diagnosed the claimant with an adjustment disorder with mild depressive symptoms and a personality disorder with dependent, avoidant, histrionic and obsessive/compulsive features.  The claimant's [Global Assessment of Functioning] was 60.  According to the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition–TR, 2000, this indicates the claimant has moderate symptoms.

R. at 18.  The finding of "moderate" symptoms was further supported by the Psychiatric Review Technique form completed by Dr. Donald G. Glasco, who concluded that Ms. Quinlisk suffers from "moderate" limitation in relation to difficulties in maintaining concentration, persistence or pace.  R. at 214; see Def.'s Response [Docket No. 13] at 4-5 ("Donald G. Glasco, M.D., a nonexamining State agency psychiatrist, reviewed the record, including Dr. Jones's medical report, and completed a Psychiatric Review Technique form.").  Furthermore, the record includes a Mental Residual Functional Capacity Assessment ("MRFCA") form.[5]  R. at 112-15.  The examiner who completed the form assessed Ms. Quinlisk as being moderately limited in her ability to (1) "understand and remember detailed instructions," (2) "carry out detailed instructions," (3) "maintain attention and concentration for extended periods," (4) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and (5) "interact appropriately with the general public."  R. at 112-13.

While the ALJ relied on the findings of Drs. Jones and Glasco, he failed to include any moderate mental limitations, other than the limitation on interacting with the general public and on performing complex tasks, in the hypothetical question he posed to the VE.  Ms. Quinlisk's attorney, however, did ask about such limitations.  When questioning the VE, her attorney asked the VE to add the moderate limitations indicated on the MRFCA, including the limitation on the "ability to complete a normal workday and

---

[5]The form is unsigned, but appears to be part of an agency consultative examination.  The categories of impairments are drawn from the Psychiatric Review Technique form completed by Dr. Glasco.  R. at 112.

7

work week without interruptions from psychologically based symptoms and to perform at a constant pace without an unreasonable number and length of rest periods."[6]  R. at 299-300.  The VE testified that such limitations would eliminate all jobs for Ms. Quinlisk.  R. at 300; *cf. Wiederholt v. Barnhart*, 121 F. App'x 833, 839-40 (10th Cir. 2005) (unpublished) ("The omission of the ALJ's more specific findings is particularly significant given that, when the ALJ posed a hypothetical question incorporating all of the limitations found by Dr. Mouille, the VE opined that Mrs. Wiederholt would be precluded from all work activity.").  It is not entirely clear from the testimony of the VE whether he based that opinion on all the moderate limitations or only the one relating to the "ability to complete a normal workday and work week without interruptions."  R. at 299A-300.  In any event, when the hypothetical either included the additional limitation posed by narcolepsy or at least one additional moderate limitation from the MRFCA, the VE testified that Ms. Quinlisk would be unable to perform any jobs in the national economy.

In short, the Commissioner failed to meet his burden on the fifth step of the analysis.  It is, therefore, unnecessary to fully address Ms. Quinlisk's other objections.

### III. CONCLUSION

Upon consideration of the plaintiff's objections and of the record as a whole, I find that the ALJ's decision is not supported by substantial evidence and must be reversed.  Accordingly, it is

---

[6]This limitation should have read "consistent," not "constant."  While that difference could potentially be material, there is no indication, in light of the attorney identifying from where he was reading the limitation and its overall substance, that the VE did not accurately understand the nature of the limitation.

**ORDERED** that the January 18, 2007 decision of the Commissioner is **REVERSED AND REMANDED** to the Commissioner for additional proceedings in accordance with this Order.  It is further

**ORDERED** that plaintiff may have her costs by filing a bill of costs within fourteen days of the date of this order.  See Fed. R. Civ. P. 54(d)(1); D.C.COLO.LCivR 54.1; 28 U.S.C. § 2412(a)(1).

DATED January 7, 2010.

                                                BY THE COURT:

                                                s/Philip A. Brimmer
                                                PHILIP A. BRIMMER
                                                United States District Judge